## ED. BRADY v. THE STATE.

CRIMINAL LAW. *Railroad agent. Ticket office.* It is a good defense to an indictment of a ticket agent at a railroad station, under the new Code, section 2359, for failing to keep open his office for one hour before the departure of a particular passenger train, that the railroad company, with notice to the public, had, by its rules, dispensed with the sale and purchase of tickets for that train, and required the passengers to pay the regular ticket fare on the train.

### FROM SUMNER.

Appeal in error from the Circuit Court of Sumner county.     Jo. C. STARK, J.

J. J. TURNER and C. R. HEAD for Brady.

ATTORNEY-GENERAL 'LEA for the State.

COOPER, J., delivered the opinion of the court.

By the act of 1865, chapter 15 (new Code, section 2359), it is made "the duty of every person who shall sell, or be authorized to sell tickets to passengers to travel on any railroad in this State, at any station or depot within the State, to open his office for the sale of tickets at least one hour before the time for the departure of each passenger train from each station or depot, and keep the same open during said space of one hour, and until the departure of each passenger train, and be always ready during said time to sell tickets to passengers as they may, during said hour, apply for them." A failure to comply strictly with

these provisions subjects the delinquent to indictment
or presentment, and, upon conviction, to be fined not
less than twenty nor more than fifty dollars.

The plaintiff in error was indicted by the attorney-
general *ex officio,* by order of the court, for unlawfully
failing to open and keep open the ticket office at
Fountain Head, a way station on the Louisville &
Nashville railroad, of which station he was the ticket
agent, for one hour before the departure of the pas-
senger train on a particular morning. The judge
tried the case without a jury, and found the defendant
guilty. He has appealed in error.

Fountain Head is a way station on the Louisville
& Nashville railroad, at which all of the trains stop
except the fast express train. The defendant is the
sole agent of the railroad company at that station,
being ticket agent, freight agent and telegraph operator.
He sells tickets for the various passenger trains which
stop at that station. But, in view of his various
duties, he is not required by the rules of the company
to open the ticket office for the morning accommoda-
tion train, which passes the station before six o'clock,
but is excused from so doing. The railroad company,
in consequence thereof, instructs the conductors run-
ning that train not to charge passengers any other
rate than the regular ticket rate, and passengers by
that train are permitted to pay the same fare on the
train as they would pay for tickets. The proof shows
that this was not a new arrangement at the time
alleged in the indictment, but had been in force for
a year or more. It is further shown that on the

morning of the commission of the alleged offense, the ticket office was as usual not opened for the accommodation train, although several passengers got on the train at the station.

The proof is, therefore, clear that the ticket office was not opened as required by the terms of the statute. It is equally clear that the railroad company, by its rules, had dispensed with the sale of tickets for the train in question, and had provided that the passengers might pay their fare after entering the cars at the same rate as if they had purchased tickets, and that these rules had been in force for a sufficient length of time to become known to the public. And the question is whether these facts constituted a defense to the indictment.

Of course, it would not be in the power of the company by any rules it might adopt to dispense with a compliance upon the part of its officers with a general law of the Legislature regulating the performance of a public duty intended for the benefit of passengers on the company's trains, if the law were within the competency of the Legislature. And no argument has been submitted tending to show that the statute in question was not within the police power of the State. The only ground upon which the defense relied on can be made is, that the facts do not bring the defendant within the purview of the law having in view the object of its passage, the evil intended to be remedied, and the real intention of the Legislature. And the question is one of grave difficulty.

Railroad companies, we know as matter of current

Brady *v.* The State.

history, adopted the plan of receiving the fare of passengers by the sale of tickets, this plan affording a check on the conduct of their own officers. And in order to render the system effectual, and to compel the passengers to buy tickets, a higher fare was imposed upon them if they undertook to pay on the trains. Under these circumstances, the statute in question, or something like it, was eminently proper, by which it was made the duty of the ticket seller to keep his office open at the most suitable hour for the passengers, immediately preceding the departure of the train, for a sufficient length of time to enable persons to buy their tickets conveniently. The act, it will be noticed, is not addressed to the company, but to the ticket seller. The power of the company over its ticket offices and ticket officers is left untrammeled. It may locate the one and prescribe the duties of the other as if the statute had not been passed. The companies might do away with ticket offices at the stations, and require passengers to pay their fares in the cars. If there be no ticket seller or no ticket office, the statute would have nothing to operate on. And the real point of difficulty in the case is to determine whether this result has not been brought about by the company's rules.

If the defendant was a regular ticket seller, required to sell tickets for all the passenger trains which stopped at his station, and passengers who got on the trains at the station were mulcted in a penalty for failing to buy tickets in advance, the defendant would be guilty under the statute beyond all doubt, and the

company could not relieve him from the penalty by merely requiring him not to open his office; for that would be an attempt to nullify the statute. But the company, by rules of sufficiently long standing to become known to the public, dispensed with the sale and purchase of tickets for the morning accommodation train, and required the passenger to pay only the regular ticket fare on the train. The company might dispense with tickets and ticket offices altogether, in which event there would be no person to sell, or authorized to sell tickets, and no person to indict. And the question is whether the company may not do for one train, not by mere caprice, but for reasons connected with the economical administration of the company's business, what it might do for all the trains, giving the public proper and reasonable notice. The statute was intended to compel ticket sellers to perform the duty imposed upon them by their companies at the most convenient time for the passengers. It was not designed to compel them to do that from which they were expressly exempted by the rules of the company, without any detriment to the passenger, and with notice to him. The defendant was, in fact, not a ticket seller for the particular train, tickets for that train having been dispensed with by the company. Literally, the statute would apply to any person who sells, or is authorized to sell, tickets at a station for any train. But the intention of the act is to compel the performance of duty only as to those trains for which tickets are required to be purchased by the company. "The reason and intention of the law,

when obvious, will always prevail over the literal sense of the words ": 3 Head, 264.

The facts do, therefore, make out a good defense, and the judgment of the trial court must be reversed, and judgment rendered here for the defendant.